UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
NASSAU COUNTY BRIDGE AUTHORITY,

                 Plaintiff,                                **MEMORANDUM OF**
                                                             **DECISION AND ORDER**
          -against-                                 14-cv-5197 (ADS)(ARL)

JAMES OLSEN, HENRY MARINE SERVICE, INC.,
and STERLING EQUIPMENT, INC.,

                 Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Hopkins & Kopilow, Esqs.**
*Attorneys for the Plaintiff*
100 Quentin Roosevelt Blvd., Suite 506
Garden City, NY 11530
       By: Stanley Kopilow, Esq., Of Counsel

**Rubin, Fiorella, & Friedman LLP**
*Attorneys for the Defendants James Olsen and Henry Marine Service, Inc.*
630 Third Street, 3rd Floor
New York, NY 10017
       By: James Mercante, Esq.
           Michael E. Stern, Esq.
           Richard Gonzalez, Esq., Of Counsel

**Betancourt VanHemmen Greco & Kenyon LLC**
*Attorneys for the Defendant Sterling Equipment, Inc.*
46 Trinity Place
New York, NY 10006
       By: Ronald Betancourt, Esq.
           Alton James Evans, Jr., Esq., Of Counsel

**SPATT, District Judge.**

       This case arises from the damages caused to the Atlantic Beach Bridge (the "Bridge") in Nassau County on December 8, 2012, after the Kelly, a 260-foot barge being towed by the Dorothy J, a towing vessel, collided with the northwest fender system of the Bridge.

On August 26, 2014, the Plaintiff Nassau County Bridge Authority (the "Plaintiff") commenced an action in the Nassau County Supreme Court against the Defendants James Olsen ("Olsen"), the captain of the Dorothy J at the time of the collision; Henry Marine Service, Inc. ("Henry Marine"), the owner of the Dorothy J at the time of the collision; and Sterling Equipment, Inc. ("Sterling"), the owner of the Kelly (collectively, the "Defendants").

The Plaintiff asserted one cause of action based on negligence and sought to recover $850,000 in damages.

On September 4, 2014, the Defendants Olsen and Henry Marine filed a timely notice of removal pursuant to 28 U.S.C. §§ 1333, 1441, and 1446 on the basis of "admiralty jurisdiction."

Presently before the Court is a motion filed by the Plaintiff to remand this action to the Nassau County Supreme Court. For the reasons set forth below, the motion to remand is granted.

## I. DISCUSSION

The Defendants Olsen and Henry Marine assert that there is federal jurisdiction over this action because (1) the Plaintiff's negligence claim raises the question of whether the Defendants complied with federal drawbridge operation regulations; and (2) after the 2011 amendment to 28 U.S.C. § 1441, admiralty cases, such as this, can be removed to federal court without the assertion of an independent basis of federal subject matter jurisdiction. (The Defs.' Mem. of Law at 2–5.)

In response, the Plaintiff asserts that the Defendant has failed show that its claims invoke the jurisdiction of this Court because (1) its negligence claim does not necessarily raise a federal issue, and even if it does, that issue is not substantial enough to warrant exercising federal jurisdiction; and (2) the amendments to 28 U.S.C. § 1441 do not alter a change to the operation

2

of removal in admiralty cases under 28 U.S.C. § 1333, which preserves a plaintiff's right to pursue admiralty claims against *in personam* defendants in state court.

In turn, the Court will address the parties' arguments.

## A. As to Whether the Plaintiff's Negligence Claim Presents a Federal Question

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441.

"'A district court must remand a case to state court 'if at any time before final judgment it appears that the district court lacks subject matter jurisdiction.'" Vera v. Saks & Co., 335 F.3d 109, 113 (2d Cir. 2003) (quoting 28 U.S.C. § 1447(c)). In addition, a party seeking removal bears the burden of showing that federal jurisdiction is proper. Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 327 (2d Cir. 2011) (quoting Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004)).

As noted, the Defendants Olsen and Henry Marine contend that removal is proper because the Plaintiff's negligence claim presents a federal question.

Pursuant to 28 U.S.C. § 1331, district courts have original subject matter jurisdiction "over all civil actions arising under the [United States] Constitution and the laws and treaties of the United States."

Under the "well-pleaded complaint rule," a claim "arises" under the federal law only if a question of federal law appears on the face of the plaintiff's "well-pleaded complaint" — thus requiring a court to ignore any and all answers, defenses, and counterclaims. See Fleet Bank, Nat'l Ass'n v. Burke, 160 F.3d 883, 886 (2d Cir. 1998) ("[The well-pleaded complaint] rule

requires a complaint invoking federal question jurisdiction to assert the federal question as part of the plaintiff's claim and precludes invoking federal question jurisdiction merely to anticipate a federal defense.").

"This provision for federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law (e.g., claims under 42 U.S.C. § 1983)." Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312, 125 S. Ct. 2363, 2366, 162 L. Ed. 2d 257 (2005). However, the Supreme Court has also recognized in a limited number of cases federal "arising under" jurisdiction over state-law claims that "turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues[.]" Id.

Stated another way:

jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

Gunn v. Minton, 133 S. Ct. 1059, 1065, 185 L. Ed. 2d 72 (2013). Where all four of these requirements are met, the Supreme Court has held that federal jurisdiction is proper "because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." Id. (quoting Grable, 545 U.S. at 313–14, 125 S. Ct. 2363).

For example, in Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg., *supra*, the Internal Revenue Service ("IRS") seized property owned by the plaintiff to satisfy a federal tax delinquency and then sold the property to the defendant. 545 U.S. at 310–11, 125 S. Ct. 2363. The plaintiff then brought a quiet title action in state court, claiming that the defendant's record title was invalid because the IRS had failed to notify the plaintiff in the manner specified in 26

U.S.C. § 6335. The district court denied the plaintiff's motion for remand, finding that the plaintiff's claim presented a substantial federal question, and then issued summary judgment in favor of the defendant. Id. The Sixth Circuit affirmed. Id.

The Supreme Court in Grable affirmed the decision of the Sixth Circuit and found that the plaintiff's quiet title claim warranted federal jurisdiction. Id. at 312. The Court reasoned that the plaintiff's state law claim necessarily raised a federal issue because its claim was premised on whether the IRS complied with the notice requirements of a federal law. Id. at 314–15. It further found that "the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case." Id. at 315. In addition, it concluded that the meaning of the federal tax provision "is an important issue of federal law" because it impacted "the ability of the IRS to satisfy its claims from the property of delinquents." Id. (citation omitted).

The Court in Grable distinguished its case from Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). There, the plaintiffs brought actions in state court against a defendant-drug manufacturer alleging that one of the defendant's drugs caused their children to be born with deformities. Id. at 805–06. The complaints sought damages under a common law theory of negligence and in one of the counts alleged that the defendant's violated a provision of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*, which constituted a "rebuttable presumption of negligence." Id. 806. The district court denied a motion to remand, pointing to the provision raised by the plaintiffs regarding the FDCA. Id. The Sixth Circuit reversed. Id. at 807.

The Supreme Court in Merrell Dow affirmed the decision by the Sixth Circuit. In doing so, the Court found important the fact that Congress had not created a specific federal cause of

5

action under the FDCA and had not indicated in the FDCA that state law remedies were pre-empted. Id. at 814. Without any indication that Congress intended for federal courts to have jurisdiction over FDCA claims, the Court concluded the exercise of federal jurisdiction was inappropriate "solely because the violation of the federal statute is said to be a 'rebuttable presumption' or a 'proximate cause' under state law, rather than a federal action under federal law." Id. at 812.

The Court in Grable distinguished its case from Merrell Dow because Merrell Dow involved the plaintiff's assertion of the violation of a federal statute and regulation as evidence of "negligence *per se*," which the Court noted is relatively common in "garden variety state tort law" claims. Grable, 545 U.S. at 319. Thus, recognizing federal jurisdiction in that case would have "heralded a potentially enormous shift of traditionally state cases into federal courts." Id. By contrast, the plaintiff's claim in Grable was "the rare state quiet title action that involves contested issues of federal law." Id. Thus, the Court in Grable found that, unlike in Merrell Dow, granting "jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the normal currents of litigation." Id. at 319. Accordingly, the Court in Grabel found Merrell Dow to be inapposite and ruled that federal jurisdiction was appropriate in that case. Id.

Relying on Grable, the Defendants Henry Marine and Olsen assert that the Plaintiff's common law negligence claim "arises under" federal law because the Plaintiff alleges that they violated 33 C.F.R. 117. (The Defs.' Opp'n Mem. of Law at 5–6.) The Court disagrees for three reasons.

First, as noted, in order for a state law claim, like negligence, to invoke federal jurisdiction, it must "necessarily raise a stated federal issue." Grable, 545 U.S. at 314, 125 S. Ct. 2363. An issue is necessarily raised if the plaintiff cannot prevail on its state law claim without

reference to federal law or regulations. See id. ("Grable has premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law. Whether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim.").

Here, the Plaintiff alleges one claim of negligence. It is well-established that "[t]he elements of a *prima facie* negligence claim in New York are: the existence of a duty of care owed to the plaintiff, a breach of that duty, such that the breach proximately caused the plaintiff's injuries." In re Facebook, Inc., IPO Sec. & Derivative Litig., 922 F. Supp. 2d 475, 482 (S.D.N.Y. 2013); see also Pulka v. Edelman, 40 N.Y.2d 781, 390 N.Y.S.2d 393, 358 N.E.2d 1019 (1976)).

One way to prove negligence is by alleging the violation of a federal or state statute, which constitutes *negligence per se*. See Grable, 545 U.S. at 318 ("'The violation of federal statutes and regulations is commonly given negligence *per se* effect in state tort proceedings.'") (quoting Restatement (Third) of Torts § 14, Reporters' Note, Comment a, p. 195 (Tent. Draft No. 1, Mar. 28, 2001)); see also Elliott v. City of New York, 95 N.Y.2d 730, 734, 747 N.E.2d 760, 762 (N.Y. 2001) ("As a rule, violation of a State statute that imposes a specific duty constitutes negligence *per se*, or may even create absolute liability.")

In the present case, the Plaintiff asserts that the Defendants were negligent based on its alleged violations of 33 C.F.R. 117.1, which sets forth general special operating regulations for drawbridges. (Compl. at ¶ 23.) However, the Plaintiff also asserts that the Defendants breached a duty of care in ways that are independent of 33 C.F.R. 117.1 — namely, that the Defendant were negligent because they "(a) failed to maintain a proper lookout; (b) failed to maintain a safe

rate of speed; (c) failed to reduce speed upon approaching the location of the Bridge; (d) failed to observe and avoid striking the Bridge[.]" (Id.)

Thus, the violation of a federal statute is not a "necessary" component of the Plaintiff's claim because the Plaintiff can prevail on its negligence claim without resorting to a federal regulation. See Langer v. Infinity Moving & Storage, Inc., No. 11 CV 3955 (HB), 2011 WL 3792822, at *1 (S.D.N.Y. Aug. 25, 2011) (finding that the "Plaintiffs can prevail on their negligence claims without reference to the FMCA regulations," and therefore a federal question was not necessarily raised); Rivera v. Horizon Offshore Contractors, Inc., No. 05CV6500 (HB), 2005 WL 3030841, at *2 (S.D.N.Y. Nov. 10, 2005) ("[The] Plaintiff's first cause of action for negligence includes general allegations that the Defendants breached a variety of state and federal rules and regulations, and specifically mentions that OSHA standards were violated. This does not mean that Plaintiff's right to relief necessarily depends on federal law.").

Second, even if an interpretation of 33 C.F.R. § 117.1 was necessary to resolving the Plaintiff's negligence claim, the Defendants have provided no explanation as to why its interpretation presents an "important issue of federal law that sensibly belongs in a federal court." Grable, 545 U.S. at 315. As noted, 33 C.F.R. § 117.1 sets forth general regulations for draw bridges in the United States. There is no indication that its interpretation implicates important federal interests, and the Supreme Court made clear in Merrell Dow that the mere reference to the violation of a federal statute as evidence of negligence is not enough to confer federal jurisdiction:

> We think it would similarly flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation of the federal statute is said to be a 'rebuttable presumption'

or a 'proximate cause' under state law, rather than a federal action under federal law.

478 U.S. at 812 (emphasis added).

Third, this case involves the assertion of a violation of a federal statute as evidence of negligence, which is a common practice in state negligence cases. See Grable, 545 U.S. at 318 ("The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings.") (citation omitted). Thus, recognizing federal jurisdiction on that basis alone would dramatically expand federal jurisdiction over claims that are traditionally litigated in state court, a result that the Supreme Court in Grable directed federal courts to avoid in the absence of clear evidence of Congressional intent suggesting otherwise. See Grable, 545 U.S. at 314 ("Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction."); Langer, 2011 WL 3792822 ("[F]ederalizing this portion of automobile accident litigation would significantly 'disturb[ ] . . . the balance of federal and state responsibilities,' . . . , which are generally deemed almost exclusively the province of state courts.'") (quoting Grable, 545 U.S. at 314).

Accordingly, the Court finds that the Plaintiff's negligence claim does not "arise under" federal law.

**B. As to Whether the Plaintiff's Claim is Removable Based on Admiralty Jurisdiction**

The Defendants Henry Marine and Olsen also assert that this Court has removal jurisdiction over the Plaintiff's negligence claim because it is an admiralty action. (The Defs.' Mem. of Law at 2–3.)

As noted, pursuant to 28 U.S.C. § 1441, "[a] defendant may remove an action originally filed in state court to federal court if the case originally could have been filed in federal court." Saks & Co., 335 F.3d at 113.

28 U.S.C. § 1333 states, "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1).

As federal courts have original jurisdiction over admiralty claims pursuant to 28 U.S.C. § 1333(1), the Defendants Henry Marine and Olsen contend that this Court has removal jurisdiction pursuant to 28 U.S.C. § 1441. (The Defs.' Mem. of Law at 2–5.)

In response, the Plaintiff relies on the second clause of § 1333, which provides district courts with original jurisdiction over admiralty claims, "saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1) (emphasis added). This clause is referred to by courts as the "saving to suitors" clause. The Plaintiff asserts that the "saving to suitors" clause is intended to preserve its ability to litigate its common law admiralty claims, such as negligence, in state court. (The Pl.'s Reply Mem. of Law at 4–5.) Therefore, it asserts that permitting removal of its negligence claim under § 1441 is improper because doing so undermines the "saving to suitors" clause. (See id.) The Court agrees.

Prior to the enactment of the First Judiciary Act, the predecessor to 28 U.S.C. § 1333, some common law remedies in admiralty cases were administered by state courts. See Romero v. Int'l Terminal Operating Co., 358 U.S. 354, 362, 79 S. Ct. 468, 475, 3 L. Ed. 2d 368 (1959) ("[S]ome remedies in matters maritime had been traditionally administered by common-law courts of the original States."). While the First Judiciary Act granted federal courts original jurisdiction over admiralty cases, the "saving to suitors" clause has been interpreted by the

Supreme Court as a means of preserving the role of state courts in administering common law remedies, such as a jury trial, in admiralty cases. See, e.g., Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 444, 121 S. Ct. 993, 999, 148 L. Ed. 2d 931 (2001) ("Thus, the saving to suitors clause preserves remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims."); New Jersey Steam Nav. Co. v. Merchant's Bank of Boston, 47 U.S. 344, 390, 12 L. Ed. 465 (1848) ("The saving clause was inserted, probably, from abundant caution, lest the exclusive terms in which the power is conferred on the District Courts might be deemed to have taken away the concurrent remedy which had before existed.").

The "saving to suitors" clause of § 1333 is in tension with the removal statute, 28 U.S.C. § 1441. That is because, as noted above, the "saving to suitors" clause was intended to preserve the historic role of state courts in administering common law remedies in admiralty cases. Thus, if a court were to interpret § 1441 to permit removal of all admiralty cases, it would threaten the vitality of the "saving to suitors" clause by taking common law admiralty cases that had been traditionally administered in state court and placing them in federal court.

In order to reconcile this potential conflict with the "saving to suitors" clause, the Supreme Court and the Second Circuit have interpreted § 1441 as only permitting removal of common law admiralty claims where there is a separate basis of federal jurisdiction, such as diversity of citizenship.

For example, in Romero v. Int'l Terminal Operating Co., 358 U.S. 354, 359, 79 S. Ct. 468, 473, 3 L. Ed. 2d 368 (1959), the plaintiff, a Spanish citizen, was injured while working on a boat owned by a Spanish corporation, and brought suit in federal court. Id. The district court dismissed his claim against the Spanish corporation for lack of subject matter jurisdiction because the parties were not diverse, and it found that an *in personam* admiralty claim did not,

by itself, present a federal question. See id. at 358. Thus, the question on appeal in Romero was whether admiralty cases "arise under" federal law for purposes of 28 U.S.C. § 1331 and present a federal question.

The Supreme Court in Romero held that admiralty cases do not present federal questions. See id. at 379–80. In so doing, the Court noted that making admiralty cases freely removable would threaten to undermine the "saving to suitors" clause:

> Thus the historic option of a maritime suitor pursuing a common-law remedy to select his forum, state or federal, would be taken away by an expanded view of § 1331, since saving-clause actions would then be freely removable under § 1441 of Title 28, 28 U.S.C.A. § 1441.30.

Id. at 371–72. To reconcile this conflict between § 1333 and § 1441, the Court held that admiralty cases did not present federal questions, and thus, were only removable if the admiralty case had an independent basis of subject matter jurisdiction, such as diversity. See id.

Relying on Romero, the Second Circuit in Pierpoint v. Barnes, 94 F.3d 813 (2d Cir. 1996) also suggested in *dicta* that the admiralty cases were not removable, without diversity jurisdiction, because doing so would undermine the "saving to suitors" clause. In that case, the plaintiffs were killed in a plane piloted by the defendant when it crashed into the ocean southeast of Sea Isle City, New Jersey. Id. at 815. The plaintiffs' estates filed suit against the defendant's estate in Connecticut state court, asserting a claim under the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§ 761 *et seq.* Id. The defendant removed the case to federal court claiming that the plaintiffs' DOSHA claim "arose" under federal law. Id.

The district court granted the plaintiff's motion to remand. Pierpoint v. Barnes, 892 F. Supp. 60, 61 (D. Conn. 1995). It reasoned, relying in part on Romero, that "[c]ases which lack diversity of parties and which arise under admiralty laws are not removable from a state court exercising its concurrent jurisdiction over admiralty claims." Id. (citing Benedict on Admiralty,

8–6 § 122 (7th ed. Supp.1995)). It then concluded that DOSHA merely "authorizes" an admiralty action and does not provide for an independent federal cause of action:

> Since DOHSA merely authorizes an admiralty action, a party proceeding under DOHSA must allege a theory of recovery cognizable by a court sitting in admiralty jurisdiction." Best v. Honeywell, Inc., 491 F. Supp. 269, 270 (D. Conn. 1980). Moreover, no federal court has held that DOHSA or other admiralty laws generate both federal question jurisdiction and admiralty jurisdiction.

Id. at 61. Since the case did not present a federal question, and there was not complete diversity, the district court in Pierpoint found a remand to be necessary. Id.

On appeal, the Second Circuit in Pierpoint found that it lacked the jurisdiction to review the remand decision because under 28 U.S.C. §§ 1447(c), (d), appellate review is prohibited where a court remands a claim based on a defect in the removal procedure. See 94 F.3d at 815–16. Although the court did not expressly affirm the rationale of the district court, it suggested in *dicta* that admiralty cases are not removable to federal court because doing so would undermine the "saving to suitors" clause:

> Admiralty excepts a class of cases from the general rule that cases which could originally have been filed in federal court are removable to federal court at the option of the defendant. <u>Common law maritime cases filed in state court are not removable to federal court, due to 28 U.S.C. § 1333's 'saving to suitors' clause.</u> Dating back to the Judiciary Act of 1789, this clause preserves a plaintiff's right to a state court forum in cases arising under the common law of the sea. Romero v. International Terminal Operating Co., 358 U.S. 354, 363, 79 S.Ct. 468, 475, 3 L.Ed.2d 368 (1959); 14 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 3673 (1985).

Id. 816 (2d Cir. 1996) (emphasis added).

Recently, a few out-of-circuit district courts decisions have interpreted the 2011 amendments to § 1441, as permitting all admiralty cases to be removable without an independent

13

basis of federal jurisdiction. The Defendants Henry Marine and Olsen urge this Court to follow those cases. (The Defs.' Mem. of Law at 5.)

Prior to being amended in 2011, § 1441 provided that, "[a]ny civil action of which the district courts <u>have original jurisdiction founded on a claim or right under the Constitution, treaties or laws of the United States</u> shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C.A. § 1441(b) (West 2006) (emphasis added).

In <u>In re Dutile</u>, 935 F.2d 61, 63 (5th Cir. 1991), the Fifth Circuit suggested that admiralty cases were not removable under the pre-2011 version of § 1441 because the Supreme Court in <u>Romero</u> held that admiralty claims did not arise under federal law for purposes of § 1331. Relying on <u>Romero</u>, the Fifth Circuit concluded that admiralty claims were not "founded on a claim or right under the Constitution, treaties or laws of the United States" within the meaning of § 1441, and, thus, could not be removed under § 1441. <u>See</u> <u>id.</u> at 63 ("As we construe the plain language of § 1441(b), read in conjunction with <u>Romero</u>, Congress simply has not supplied the district courts with removal jurisdiction of admiralty claims absent diversity.").

In other words, although the court in <u>In re Dutile</u> held that admiralty cases were not removable, it did not do so on the basis of the "saving to suitors" clause but rather, on the basis of the language of the pre-2011 § 1441, which required that a case be "founded on a claim or right under the Constitution, treaties or laws of the United States" in order to be removable.

In 2011, Congress amended § 1441 by removing the requirement that admiralty claims be "founded on a claim or right under the Constitution, treaties or law of the United States." Thus, under the current version, any claim can be removed from state court so long as the district court has "original jurisdiction" over that claim.

In <u>Ryan v. Hercules Offshore, Inc.</u>, 945 F. Supp. 2d 772, 775 (S.D. Tex. 2013), the court held that under the current version of § 1441, all admiralty cases were removable because § 1333 confers original jurisdiction on federal courts over admiralty claims. It interpreted Congress's decision to remove the requirement that cases be "founded on a claim or right under the Constitution, treaties or law of the United States" as reflecting its intent to make all admiralty cases removable:

> While it is possible that Congress did not intend for the changes to section 1441 to be substantive, it nevertheless made substantial changes to the text of section 1441(b). The new statute does not contain any ambiguous language. Under the amendment, as under the prior version, federal district courts may exercise removal jurisdiction over cases for which they have original jurisdiction unless an act of Congress prohibits that exercise of jurisdiction . . . . Here, given the indication in prior caselaw that the saving to suitors clause doe[s] not guarantee a nonfederal forum, an amendment allowing removal is not absurd. Thus, the court may not consider the legislative history.

<u>Id.</u> at 778.

Further, the court in <u>Ryan</u> did not the find the "saving to suitors" clause to be a barrier to removal because that clause never guaranteed a plaintiff's choice of forum. <u>See id.</u> at 777. It reasoned that admiralty cases have always been removable where there is diversity of citizenship jurisdiction, and thus, a plaintiff has never had an absolute right to proceed with an admiralty claim in state court. <u>See id.</u> at 776. Therefore, the court took a more limited view of the "saving to suitors" clause — namely, that it was only intended to give state courts the ability to administer remedies in admiralty actions and not to protect the plaintiff's choice of forum. <u>See id.</u> at 777.

The Court finds that the court's narrow reading in <u>Ryan</u> of the "saving to suitors" clause to be contrary to prior decisions that are binding on this Court. As noted, the Supreme Court in <u>Romero</u> held that the "saving to suitors" clause was intended to preserve "the historic option of a

maritime suitor pursuing a common-law remedy to select his forum[.]" 358 U.S. at 371-72. The Second Circuit in Pierpoint also suggested that the "saving to suitors" clause was intended to protect a plaintiff's right to pursue a common law admiralty case in state court: "[d]ating back to the Judiciary Act of 1789, this clause preserves a plaintiff's right to a state court forum in cases arising under the common law of the sea." Pierpoint, 94 F.3d at 816. Thus, adopting the broad interpretation of the 2011 amendments to § 1441 favored by the court in Ryan is contrary to the interpretation by the Supreme Court and the Second Circuit of the "saving to suitors" clause as reflecting an intent by Congress to preserve a plaintiff's choice of forum in common admiralty cases, without another basis of federal jurisdiction.

Had there been an indication in the legislative history of the 2011 amendments to § 1441 that Congress had intended to remove or alter the "saving to suitors" clause, the Court would find the reasoning in Ryan to be persuasive. However, that is not the case. To the contrary, the House Report on the 2011 amendments indicates that Congress's intention was procedural, not substantive: "Section 103(a)(3) places the provisions that apply to diversity actions under one subsection. This change is intended to make it easier for litigants to locate the provisions that apply uniquely to diversity removal." H. R. Rep. No. 112–10; see also Gregoire v. Enter. Marine Servs., LLC, 38 F. Supp. 3d 749, 763 (E.D. La. 2014) ("The House Report on the 2011 amendments evidences no intent to change the operation of removal of maritime or admiralty cases.").

Without any clear indication in the language or the legislative history of the 2011 amendments of § 1441 that Congress intended to alter the historic understanding of the "saving to suitors" clause in § 1333, the Court is unwilling to adopt the court's broad reading of § 1441 in Ryan. Therefore, consistent with the interpretation of the "saving to suitors" clause by the

Supreme Court in Romero and the Second Circuit in Pierpoint, the Court holds that common law admiralty claims initiated by a plaintiff in state court are not removable under § 1441 unless the defendants provide an independent basis of federal jurisdiction, such as diversity of citizenship. See Lewis, 531 U.S. at 455 ("We have previously refused to hold that admiralty claims, such as a limitation claim, fall within the scope of federal question jurisdiction out of concern that saving to suitors actions in state court would be removed to federal court and undermine the claimant's choice of forum.").

The court further notes that its decision is in accordance with the majority of district courts, which have thus far declined to follow Ryan. See, e.g., J.P. v. Connell, No. 2:15-CV-103 (SPC), 2015 WL 1346976, at *4 (M.D. Fla. Mar. 26, 2015) ("A plain reading and interpretation of Section 1441 when read in light of the savings to suitors clause undermines the reasoning in Ryan."); Boudreaux v. Global Offshore Res., LLC, No. CIV.A. 14-2507, 2015 WL 419002, at *5 (W.D. La. Jan. 30, 2015) ("Until the Fifth Circuit definitively decides this issue, I am disinclined to hold that Congress intended to make such a major substantive change to § 1441, which would, in effect, upset centuries of well-established precedent by denying plaintiffs their right to a jury trial."); A.E.A. ex rel. Angelopoulos v. Volvo Penta of the Americas, LLC, 77 F. Supp. 3d 481, 491 (E.D. Va. 2015) ("In light of this legislative record, Romero, and the plain meaning statutory interpretation of § 1441, the Court must deviate from Ryan. Reinforcing this position is the fact that, as correctly pointed out by Plaintiff during oral argument, the weight of the relevant authority has slowly but gradually come to oppose Ryan."); Cassidy v. Murray, 34 F. Supp. 3d 579, 584 (D. Md. 2014) (rejecting Ryan because "[t]he Court is not inclined to reject decades of well-established law to adopt an unsettled attempt to alter the course of removal procedures without clear, binding, precedent"); In re Foss Mar. Co., 29 F. Supp. 3d 955, 960 (W.D. Ky.

2014) ("No Sixth Circuit authority supports the sweeping reading of the 2011 Amendments articulated by Ryan and advanced by its progeny. Appellate precedent instead counsels in favor of a limited approach, preserving the plaintiff's choice of forum where appropriate."); Coronel v. AK Victory, 1 F. Supp. 3d 1175, 1188 (W.D. Wash. 2014) ("Due to Plaintiff's stated desire to invoke the protections of the saving to suitors clause, and in light of Romero and its progeny's emphasis on the significance of the clause, the court finds that removal to the court's admiralty jurisdiction is not appropriate.").

Applying this holding to the facts in this case, the Plaintiff commenced this action based on negligence in the state court, invoking the "saving to suitors" clause. Thus, the Plaintiff's claim, although sounding in admiralty, is not removable under § 1441, without an independent basis of federal jurisdiction. As the Defendants Henry Marine and Olsen have failed to sufficiently show any other basis of federal jurisdiction, the Court finds that remand to state court is appropriate.

## II. CONCLUSION

For the foregoing reasons, the Plaintiff's motion to remand this case to Nassau County Supreme Court is granted. The Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
September 19, 2015

                                                _/s/ Arthur D. Spatt____
                                                  ARTHUR D. SPATT
                                          United States District Judge